UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| EMIRATES AIRLINE<br><br>*Plaintiff,*<br><br>v.<br><br>JORDAN JINHEE KIM, aka JORDAN KIM, aka JINHEE KIM,<br><br>*Defendant.* | Case Number: 6:15-cv-561-Orl-18TBS |

**AMENDED COMPLAINT**

1. Plaintiff Emirates Airline ("Emirates") brings this action against defendant Jordan Jinhee Kim, aka Jordan Kim, aka Jinhee Kim ("Kim").

**JURISIDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a). The amount in controversy exceeds $75,000 and the dispute is between a citizen of a State and a subject of a foreign state. Plaintiff is a company incorporated under the laws of Dubai, United Arab Emirates, with its principal place of business also in Dubai. Defendant Kim is a United States citizen domiciled in Florida.

3. This Court has personal jurisdiction over defendant Kim because he is domiciled in the State of Florida.

4. Venue is appropriate in this district because Kim is domiciled in Seminole County, in the Middle District of Florida.

### THE PARTIES

5. Emirates is an international airline doing business in various parts of the world, including the Republic of Korea ("Korea").

6. Kim is a citizen of the United States and a former employee of Emirates. From approximately September 2012 to the present, Kim has resided permanently in the Middle District of Florida.

### SUMMARY OF ALLEGATIONS

7. Between approximately 2006 and August 2012, while working as the Finance Manager in Emirates' offices in Korea, Kim transferred without authorization approximately KRW 36 billion (approximately US $34 million) from Emirates' Korean bank account into other bank accounts in Korea and elsewhere controlled by Kim himself and his wife. In about January 2012, Kim began moving some of the stolen money to accounts at Fifth Third Bank in the Middle District of Florida, in anticipation of moving to the Orlando area with his wife, Hyun Cho ("Cho") and their two children.

8. In or about August 2012, after having moved some of the stolen money from Korea to Fifth Third Bank and having used it to purchase a house in Seminole County for over US $900,000, Kim abruptly quit his job at Emirates and moved from Korea to the Orlando area with Cho and their children.

9. Between January 2012 and November 2012, Kim transferred at least US $2.2 million of the stolen money out of Korea through various foreign bank accounts and into the Fifth Third accounts in the Middle District of Florida. He used the money to purchase the luxury home referred to above in the name of Kim&Kim Asset L.L.C. (later transferred by Quit Claim deed to Kim himself), extensive renovations on the house, numerous expensive automobiles, several pieces of investment real estate, and other assets.

## DETAILS OF KIM'S SCHEME

10. Defendant Kim was employed at Emirates' Korea offices from March 2005 to approximately August 2012. As Finance and Administration Manager, he was in charge of the accounting and finance of Emirates' Korea offices. His highest annual salary while employed by Emirates was approximately US $72,000.

11. The majority of Emirates' airline ticket sales are from third-party travel agencies. The agencies sell airlines tickets through their offices and report them to the Bank Settlement Plan ("BSP"), a system established to manage the financial settlement between travel agents and airlines. Travel agents report their daily sales for all airlines to

BSP, and BSP in turn segregates the sales (and refunds) among each of the airlines. Travel agents can sell tickets for cash, or by credit card. When a purchaser uses a credit card, the relevant credit card company and airline settle in accordance with a pre-arranged settlement mechanism.

12. Under the various arrangements, the credit card company settles the full net amount less the credit card service fee. With respect to the Korea-related sales for Emirates, up until June 2012, these settlement amounts were sent by the credit card companies to Emirates' bank account at the Korea Exchange Bank ("KEB").

13. To accomplish the theft, Kim claimed to others at Emirates that in the Korea operations when a credit card company overpaid Emirates for any reason, even by a very small amount, the entire amount of the charge must be refunded by Emirates (not simply the overpayment), in exchange for another credit from the credit card company for the correct amount.

14. Between 2006 and 2012, Kim repeatedly instructed KEB to make ticket "refund" payments from Emirates' account, purportedly to credit card companies, as a result of alleged overpayments by the credit card companies for airline tickets. In fact, however, the instructions to KEB resulted in payments not to credit card companies, but rather to bank accounts controlled by Kim himself and his wife, Cho. Over the roughly six-year period, Kim caused KEB to make unauthorized payments to numerous accounts he and Cho controlled in Korea totaling approximately US $34 million. Kim then caused the stolen proceeds to be transferred from the original accounts to numerous other bank

4

accounts opened in Korea and later to accounts at banks in Hong Kong, Taiwan, and elsewhere. This movement or "layering" of the stolen funds among many different accounts in various countries was intended to make tracing and recovery of the money more difficult.

15. Because payment instructions on Emirates' account at KEB had to be signed by two authorized signatories, Kim caused the fraudulent payment instructions to bear his own signature and the forged signature of another Emirates employee that was also authorized to sign payment requests from KEB.

16. Upon information and belief, once the fraudulent payments appeared on Emirates' bank statements, Kim himself, as Emirates' Finance and Administration Manager, reconciled them in a manner designed to prevent detection by Emirates' accounting system.

**KIM'S TRANSFER OF THE MONEY TO THE UNITED STATES**

17. In January 2012, several months before quitting his job and moving to the United States, Kim began sending a portion of the stolen money he now controlled to three accounts he opened or caused to be opened at Fifth Third Bank in the Middle District of Florida. Between January 2012 and November 2012, Kim caused approximately US $2.2 million to be transferred from accounts in Korea, Hong Kong, and Taiwan to several accounts at Fifth Third Bank opened in the name of Kim, his wife, or Kim&Kim Asset L.L.C., a Florida limited liability company that was created by Kim

5

to perpetuate the scheme and that, at all relevant times, was controlled by Kim, who owned a 70% share. Kim&Kim Asset L.L.C was dissolved by Kim on March 3, 2014. Its main asset, a luxury home at 2008 Alaqua Drive, Longwood, FL, was transferred by Quit Claim deed to Kim in July 2013.

18.   As set forth in the table below, Kim used a number of nominee or sham entities to open accounts that were used to house the stolen money and then initiate transfers from Asia to three accounts in the Middle District of Florida held in the name of Kim, Cho, or Kim&Kim Asset L.L.C., including:

| Date | Orig. Bank Account | Orig. Bank Name | Rec. Fifth Third Bank Account | Send. Bank | Orig. Country | Amount |
|---|---|---|---|---|---|---|
| 1/11/12 | 8219 | Kookmin Bank | 0678 | NA | Korea | $50,000.00 |
| 1/13/12 | 9548 | Hana Bank | 0678 | Standard Chartered Bank Limited | Korea | $50,000.00 |
| 1/30/12 | 4626 | Hana Bank | 0678 | HSBC Bank USA | Korea | $50,000.00 |
| 1/30/12 | 5233 | Hana Bank | 0678 | HSBC Bank USA | Korea | $50,000.00 |
| 2/3/12 | 0101 | Bank of China (Hong Kong) Ltd. | 0678 | Bank of China (Hong Kong) Ltd. | Hong Kong | $99,980.00 |
| 2/10/12 | 3838 | HSBC Hong Kong | 0678 | HSBC Bank USA | Hong Kong | $199,775.00 |

| Date | Orig. Bank Account | Orig. Bank Name | Rec. Fifth Third Bank Account | Send. Bank | Orig. Country | Amount |
|---|---|---|---|---|---|---|
| 2/21/12 | 0101 | Bank of China (Hong Kong) Ltd. | 0678 | N/A | Hong Kong | $149,980.00 |
| 2/21/12 | 4353 | Hua Nan Commercial BK Ltd. | 0678 | Bank of America, N.A. | Taiwan | $199,982.00 |
| 2/23/12 | 4353 | Hua Nan Commercial BK Ltd. | 0678 | Wells Fargo NY INTL | Taiwan | $199,982.00 |
| 2/29/12 | 4353 | Hua Nan Commercial BK Ltd. | 0678 | Bank of America, N.A. | Taiwan | $249,982.00 |
| 4/13/12 | 4353 | Hua Nan Commercial BK Ltd. | 0678 | Wells Fargo NY INTL | Taiwan | $99,982.00 |
| 6/12/12 | 4353 | Hua Nan Commercial BK Ltd. | 0678 | Bank of America, N.A. | Taiwan | $99,982.00 |
| 7/20/12 | 4353 | Hua Nan Commercial BK Ltd. | 8461 | Bank of America, N.A. | Taiwan | $124,982.00 |
| 7/31/12 | 4353 | Hua Nan Commercial BK Ltd. | 8461 | Bank of America, N.A. | Taiwan | $179,948.11 |
| 8/22/12 | 4353 | Hua Nan Commercial BK Ltd. | 8461 | Bank of America, N.A. | Taiwan | $124,982.00 |
| 9/20/12 | 4353 | Hua Nan Commercial BK Ltd. | 8461 | Bank of America, N.A. | Taiwan | $199,947.00 |
| 9/26/12 | 4353 | Hua Nan Commercial BK Ltd. | 8461 | Bank of America, N.A. | Taiwan | $34,947.32 |
| 11/23/12 | 2959 | Woori Bank | 6727 | Deutsche Bank Trust Co. Americas | Korea | $20,000.00 |

| Date | Orig. Bank Account | Orig. Bank Name | Rec. Fifth Third Bank Account | Send. Bank | Orig. Country | Amount |
|---|---|---|---|---|---|---|
| 11/23/12 | ▮4638 | Woori Bank, Los Angeles | ▮6727 | NA | Korea | $14,985.00 |
| **TOTAL** | | | | | | **$2,199,436.43** |

## ASSETS PURCHASED IN THE UNITED STATES WITH STOLEN MONEY

19.  From January to March 2012, Kim caused Kim&Kim Asset L.L.C. to use the money stolen from Emirates to pay US $1.18 million for five properties located in the Middle District of Florida, which were titled to Kim&Kim Asset L.L.C.:

  a. 2008 Alaqua Drive, Longwood, Florida for a purchase price of US $920,000. On July 12, 2013, Kim caused Kim&Kim Asset L.L.C. to execute a Quit Claim Deed in Seminole County, transferring title of the property at 2008 Alaqua Drive from Kim&Kim Asset L.L.C. to defendant Kim himself.

  b. 3310 San Jacinto Circle, Sanford, Florida (purchase price: US $73,000);

  c. 3510 San Jacinto Circle, Sanford, Florida (purchase price: US $69,500);

  d. 950 Bird Bay Court, Unit 104, Lake Mary, Florida (purchase price: US $61,000); and

  e. 536 Orange Drive, Unit 21, Altamonte Springs, Florida (purchase price: US $57,500).

20. In May and June 2012, Kim&Kim Asset L.L.C. purchased two luxury cars for approximately US $115,000:

  a. 2012 Cadillac Escalade ESV Platinum (estimated value of US $65,777); and

  b. 2012 Mercedes E350 (estimated value of US $50,000).

21. Since July 2012, Kim has also purchased at least six cars in his own name, using money stolen from Emirates, with the aggregate market value at the time of purchase of approximately US $350,000:

  a. 2006 Ferrari Spider 430 convertible (estimated value of US $160,000):

  b. 1933 Ford Roadster convertible (estimated value of US $84,700);

  c. 2012 Ford Shelby GT500 Mustang (estimated value of US $48,810);

  d. 1965 Chevrolet Impala convertible (estimated value of US $30,000);

e.   1967 Ford Mustang convertible (estimated value of between US $20,000 and US $50,000); and

f.   1955 Ford F-100 truck (estimated value of US $9,800).

## COUNT 1

## CONVERSION

22.   Plaintiff re-alleges paragraphs 1–21

23.   Kim took approximately US $34 million that belonged to Emirates without authorization through the above-described scheme. By doing so, Kim converted Emirates' property to his own through wrongful acts of dominion over Emirates' property inconsistent with its ownership of such property.

24.   Kim knowingly and willfully violated Emirates' rights. The scheme was specifically designed to deprive Emirates of its property and to transfer control of its property to Kim. Kim's stated rationale for the wire transfers — the need to make "refund" payments to credit card companies — was entirely fictitious. He transferred the money to multiple bank accounts inside and outside Korea and eventually into Florida and then used it to purchase a variety of luxury goods and real estate in Florida. By taking these actions, Kim had wrongfully obtained and exercised control over property that belonged to Emirates. Emirates is entitled to compensatory and punitive damages, as well as attorneys' fees, interest, costs, and any other relief deemed proper by the Court.

## COUNT 2

## **FRAUD**

25.   Plaintiff re-alleges paragraphs 1–21

26.   Kim falsely represented to Emirates that the wire transfers to his account were refund payments to credit card companies that were necessary in the course of business, which representations were relied upon by Emirates. In order to cause the money to be transferred out of Emirates' account at KEB, he also falsely represented that signatures of another Emirates employee authorizing the transfers were authentic when in fact they had been forged. Through these and other deceitful actions, he defrauded Emirates of approximately US $34 million.

27.   Kim knew that his representations to Emirates were false, and he designed them to advance his scheme. Specifically, he knew that Emirates would rely on his representations because, as the Finance and Administration Manager, it was his responsibility to oversee the inflow and outflow of ticket revenue from Emirates' Korea office.

28.   Kim's false representations were made with the intent to induce Emirates to act upon them. Specifically, Kim's false representations were intended to induce Emirates to permit Kim to transfer funds out of Emirates' KEB account to accounts under his control and to prevent Emirates from learning the truth. Emirates relied on Kim's misrepresentations.

29. As a result of Kim's misrepresentations and Emirates' reliance thereon, Kim was able to transfer approximately US $34 million from Emirates' accounts to his own, an injury for which Emirates is entitled to compensatory and punitive damages, as well as attorneys' fees, interest, costs, and any other relief deemed proper by the Court.

## COUNT 3

### CONSTRUCTIVE TRUST

30. Plaintiff re-alleges paragraph 1–21

31. As a finance manager for Emirates, Kim promised, either expressly or impliedly, that he would honestly administer the Emirates assets that he had access to or that were entrusted to him by Emirates during the course of his employment, including the assets in the KEB account.

32. Emirates relied on Kim's promise when Kim transferred funds from the KEB account to accounts outside Emirates' control under the guise that these transfers were refund payments to credit card companies. In reality, these alleged refund payments were transferred to accounts in Kim's personal control. Kim subsequently transferred some of those funds to the United States where he made numerous luxury purchases, including the property located at 2008 Alaqua Drive, Longwood, Florida, which is Kim's primary residence and titled solely in his name.

33. As a finance manager for Emirates, Kim had a confidential relationship with the company because he was entrusted with management and administration of significant Emirates assets.

34. Through the aforementioned fraudulent transfers, Kim unjustly enriched himself at Emirates' expense.

35. Before any money judgment is satisfied in full, Emirates seeks a constructive trust to be imposed over the property located at 2008 Alaqua Drive, Longwood, Florida, which is Kim's primary residence and titled solely in his name. A constructive trust is an appropriate equitable remedy where, as here, one party wrongfully takes the property of another and uses it to purchase a tangible asset, including real property.

## ADDITIONAL REMEDY SOUGHT

36. Alternatively to a Count 3, Emirates seeks an equitable lien over 2008 Alaqua Drive, Longwood, Florida. An equitable lien may be granted by a court of equity, arising by reason of the conduct of the parties affected that would entitle one party as a matter of equity to proceed against certain property. Such a lien may be declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. Emirates seeks to proceed against the property that Kim obtained using the money stolen from Emirates in order to recover its losses and receive compensation for the damages it sustained as a result of Kim's unlawful and egregious conduct.

## REQUEST FOR RELIEF

WHEREFORE, Emirates respectfully requests that the Court enter judgment in its favor as follows:

(1)   ordering Defendant Kim to pay Emirates damages in the sum of US $34 million, plus interest, punitive damages and attorneys fees and costs associated with pursuing this action.

(2)   pending full satisfaction of any judgment for damages, ordering a constructive trust to be imposed over the property located at 2008 Alaqua Drive, Longwood, Florida which is titled solely to defendant Kim, or alternatively imposing an equitable lien over such property; and granting such other equitable relief as Court deems just and proper.

Dated: April 16, 2015

Miami, Florida

Respectfully submitted,

Andrew C. Lourie
Florida Bar No. 87772
**Trial Counsel**
Michael Fasano
Florida Bar No. 98498
KOBRE & KIM LLP
2 South Biscayne Boulevard
35th Floor
Miami, Florida 33131
Tel: +1 (305) 967-6100
Fax: +1 (305) 967-6120
Andrew.Lourie@kobrekim.com

15

Michael.Fasano@kobrekim.com

*Attorneys for Plaintiff*
*Emirates Airline*

15